352 S.E.2d 46

**Randy M. MORRISON**

v.

**Manfred G. HOLLAND, Warden, WVP.**

**No. 17116.**

Supreme Court of Appeals of West Virginia.

Dec. 10, 1986.

Andrew Nason, Pepper & Nason, Charleston, for appellant.

Atty. Gen. Charlie Brown and Deputy Atty. Gen. Silas B. Taylor, Charleston, for appellee.

MILLER, Chief Justice:

In this original proceeding in habeas corpus, the relator, Randy M. Morrison, asserts that his due process rights were violated when the trial court over his objection gave an alibi instruction that had been held constitutionally deficient in *Adkins v. Bor-*

*denkircher*, 674 F.2d 279 (4th Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), and *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983).

The relator was indicted in January, 1980 by a Kanawha County grand jury for the crime of robbery by violence. The alleged crime took place on August 30, 1979. The victim testified that he was forced into an automobile in which the relator and two other individuals were seated. He was subsequently driven a short distance, robbed of his wallet and watch, and put out of the car. The relator was tried in late November of 1980, found guilty, and sentenced to thirty years in the State penitentiary.

The relator's defense was that of alibi. He and his girlfriend testified that on the night of the alleged crime, they were at a residence which they shared. Both testified that at the time of the alleged crime, the relator was recovering from a hernia operation and a subsequent infection which had caused bleeding that significantly hindered his mobility.

In rebuttal, the relator's two codefendants testified that he had been with them in the vehicle on the night the robbery occurred. In surrebuttal, the relator's girlfriend again took the witness stand and testified that the relator was present with her at their shared residence at the time of the robbery, but she left their residence shortly thereafter.

The State's alibi instruction[1] was patterned after an instruction that this Court had upheld as constitutional in *State v. Alexander*, 161 W.Va. 776, 245 S.E.2d 633 (1978), which was overruled in *State v. Kopa, supra.*[2] The relator's counsel ob-

---

1. State's Instruction No. 7 provides:

   "The Court instructs the jury that where the State has established a prima facie case and the defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused."

2. The *Alexander* instruction, 161 W.Va. at 780–81, 245 S.E.2d at 634, reads as follows:

   " 'The Court instructs the jury that where the state has established a prima facie case and the defendants rely upon the defense of alibi, the burden is upon them to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused.' "

jected to the instruction on the basis that it suggested that the relator "must prove his alibi beyond a reasonable doubt." The trial court overruled the objection.

A timely appeal of the relator's conviction was filed with this Court on July 28, 1982, which we refused in January, 1983. On March 24, 1982, the United States Fourth Circuit Court of Appeals declared unconstitutional the so-called *Alexander* instruction in *Adkins*, 674 F.2d at 282, noting: "[T]he Supreme Court has long admonished that the prosecution must prove every element of a criminal charge beyond a reasonable doubt. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)." The Fourth Circuit in *Adkins*, 674 F.2d at 282, observed that the burden of persuasion could be shifted to a defendant where he asserts an affirmative defense under *Patterson v. New York*, 432 U.S. 197, 206–07, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281, 289–91 (1977), and then referred to *Patterson*'s definition of an affirmative defense as one that " 'does not serve to negative any facts of the crime which the State is to prove in order to convict of [the crime charged.]' [432 U.S. at 207, 97 S.Ct. at 2325, 53 L.Ed.2d at 290]. Restated, it is a defense of mitigation or justification; the *prima facie* elements of the crime are presumed true." (Footnote omitted).

The Fourth Circuit in *Adkins*, 674 F.2d at 282, went on to analyze the essence of an alibi defense and concluded it did not meet the test of an affirmative defense: "An alibi, however, negates *every* fact necessary to prove a breaking and entering; the defendant could not commit the offense if he was elsewhere at the time. When viewed under the *Patterson* standard, the West Virginia court's characterization of the alibi as an affirmative defense must be

rejected." (Emphasis in original, footnote omitted).

Subsequently, we decided the case of *State v. Kopa, supra,* and consistent with the holding in *Adkins*, we held the so-called *Alexander* instruction to be unconstitutional, as indicated in Syllabus Point 1:

> "Because of the holding in *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.), *cert. denied,* [459 U.S. 853], 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), *State v. Alexander,* [161 W.Va. 776], 245 S.E.2d 633 (1978), is overruled to the extent that it permits the giving of an instruction that places the burden upon the defendant to prove his alibi defense sufficiently to create a reasonable doubt in the mind of the jury as to his guilt."

We also determined in *Kopa*, however, that we were not required to give full retroactivity to the *Adkins-Kopa* rule, holding in Syllabus Point 2 of *Kopa*:

> "The invalidation of the instruction approved in *State v. Alexander,* [161 W.Va. 776], 245 S.E.2d 633 (1978), that places the burden upon the defendant to prove his alibi defense sufficiently to create a reasonable doubt in the mind of the jury as to his guilt is only applicable to those cases currently in litigation or on appeal where the error has been properly preserved at trial."

Subsequent to *Kopa* in *State v. Collins,* 174 W.Va. 767, 329 S.E.2d 839 (1984), we gave the defendant the benefit of the *Adkins-Kopa* rule where his counsel had objected to the alibi instruction at trial. In *State v. Hutchinson,* 176 W.Va. 172, 342 S.E.2d 138 (1986), we were confronted with an appeal where the claim was made that trial counsel was ineffective because he had failed to object to a defective alibi instruction after *Adkins* had been issued. We concluded that such an oversight did not constitute ineffective assistance.[3]

---

3. In several post-*Adkins* cases, the Fourth Circuit Court of Appeals has considered the alibi question. In *Frye v. Procunier,* 746 F.2d 1011 (4th Cir.1984), *cert. denied,* 472 U.S. 1010, 105 S.Ct. 2707, 86 L.Ed.2d 723 (1985), the court found that the alibi instruction did not violate *Adkins'* strictures. Judge Murnaghan in a concurring opinion, 746 F.2d at 1014, stated that

any attempt to distinguish between the two instructions "is, in my view, futile." He was of the opinion that since the instruction in *Frye* was given before *Adkins,* counsel was not ineffective. In *Fulton v. Warden, Maryland Penitentiary,* 744 F.2d 1026 (4th Cir.1984), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 655 (1985), the court had an alibi question in a

In this case, as in *Kopa* and *Collins*, the defense counsel did make a timely objection to the alibi instruction, but the State points out that in both *Kopa* and *Collins* we granted relief without discussing the issue of whether the error was harmless and asserts that since this is a collateral attack on the conviction, the rule announced in *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203, 212 (1977), should be applied:

> "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' *Cupp v. Naughten*, [414 U.S. 141, 147, 38 L.Ed.2d 368, 374, 94 S.Ct. 396, 400 (1973)], not merely whether 'the instruction is undesirable, erroneous, or even "universally condemned,"' 414 U.S. at 146, 38 L.Ed.2d at 373, 94 S.Ct. 400." (Footnote omitted).

We believe the State misperceives the *Henderson* rule, which is applicable in making an initial determination of whether a given instruction is sufficiently defective as to violate due process concepts. An instruction in a state criminal case must ordinarily be found to be constitutionally defective before the federal courts can consider it. In *Henderson*, the Supreme Court declined to find the state's instruction to be constitutionally defective under the test formulated above.

A different level of review occurs when an instruction has been found to be constitutionally defective, as the question then becomes whether the instructional error can be cured under the constitutional harmless error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). There the Supreme Court held that a constitutional error could be deemed harmless if the state "prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710. We have adopted this rule as evidenced by Syllabus Point 5 of *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975):

> "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt."

*See also* Syllabus Point 1, *Maxey v. Bordenkircher*, 175 W.Va. 49, 330 S.E.2d 859 (1985); Syllabus Point 5, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).[4]

The Seventh Circuit Court of Appeals dealt with this question at some length in *United States ex rel. Miller v. Greer*, 789 F.2d 438 (7th Cir.1986) (en banc), which involved a habeas corpus attack on an Illinois conviction. After reviewing several recent United States Supreme Court opinions,[5] the Seventh Circuit in *Greer*, 789 F.2d at 444, came to this conclusion: "Thus, the Court to date never has differentiated for harmless error standard purposes between Bill of Rights and fourteenth amendment violations, or between *Doyle [v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)] and other constitutional trial violations, or between direct and collateral review of constitutional viola-

---

habeas corpus case where the instructions had been given at a pre-*Adkins* trial and held under the particular facts that the error was harmless.

**4.** The Supreme Court in *Chapman*, 386 U.S. at 23, 87 S.Ct. at 827–28, 17 L.Ed.2d at 710, also stated that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error" and cited *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel),

*Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (coerced confession), and *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (impartial judge).

**5.** *E.g., Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986); *United States v. Lane*, 474 U.S. 438, 446–447 n. 9, 106 S.Ct. 725, 730 n. 9, 88 L.Ed.2d 814, 823 n. 9 (1986); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

tions." (Footnote omitted).[6]

We also are brought to this conclusion by the United States Supreme Court's failure to make any reference to the *Henderson* standard when it finally decided that the harmless constitutional error standard could be applied to a burden-shifting instruction in *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).[7] The issue was presented in a habeas corpus appeal from a state court conviction, and neither the majority nor the concurring and dissenting opinions made any reference to the *Henderson* case as limiting the application of the harmless constitutional error doctrine because a collateral attack was being made.

The Supreme Court in *Rose*, 478 U.S. at 575–576, 106 S.Ct. at 3104, 92 L.Ed.2d at 466–67, posited the issue as: "This case presents the question whether the harmless error standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), applies to jury instructions that violate the principles of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)." (Footnote omitted).[8] Even though the instruction in *Rose*[9] as well as in *Sandstrom* and *Francis* dealt with burden-shifting instructions relating to criminal intent, we see nothing in the *Rose* opinion that would make the harmless error rule inapplicable to other types of burden-shifting instructions such as the alibi instruction involved in this case.[10]

In the present case, we have followed the Fourth Circuit's decision in *Adkins* and concluded in *Kopa* that the so-called *Alexander* instruction on alibi is unconstitutional as impermissibly burden shifting, but this error is subject to the doctrine of harmless constitutional error.[11] As we

---

**6.** In *Greer*, 789 F.2d at 445, the Seventh Circuit also said: "[W]e can find nothing to indicate that where collateral review is permitted, the [Supreme] Court has prescribed a different standard for determining harmlessness." (Footnote omitted). In note 5, 789 F.2d at 445, the court referred to *Henderson v. Kibbe, supra,* and said that "[a]ny confusion on this point may be engendered by a possible misreading of *Henderson.*" We acknowledge that the Fourth Circuit Court of Appeals appears to have applied the *Henderson* test to an alibi instruction in a habeas appeal, rather than the harmless constitutional error standard from *Chapman v. California, supra,* and *Fulton v. Warden, Maryland Penitentiary, supra,* although in a later habeas review of an alibi instruction no mention was made of the *Kibbe* test. *Frye v. Procunier, supra.*

**7.** In *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), the Supreme Court had the opportunity to decide this issue, but the members could not agree and a plurality opinion was issued.

**8.** In *Francis,* 471 U.S. at 311–12, 85 L.Ed.2d at 351–52, 105 S.Ct. at 1969–70, the instructional language found to be burden shifting stated: "'The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a considera-

tion of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.'"

**9.** The instruction in *Rose,* 478 U.S. at 575, 106 S.Ct. at 3104, 92 L.Ed.2d at 468, contained this language:

"'All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. Thus, if the State has proven beyond a reasonable ... doubt that a killing has occurred, then it is presumed that the killing was done maliciously. But this presumption may be rebutted by either direct or circumstantial evidence, or by both, regardless of whether the same be offered by the Defendant, or exists in the evidence of the State.'"

**10.** In *Rose,* 478 U.S. at 585, 106 S.Ct. at 3109, 92 L.Ed.2d at 474, the Supreme Court, after holding that the harmless error test could be utilized, declined to apply it and remanded to the Sixth Circuit for this factual determination, stating: "Although we 'plainly have the authority' to decide whether, on the facts of a particular case, a constitutional error was harmless under the *Chapman* standard, we 'do so sparingly.' *United States v. Hasting,* [461 U.S. 499, 510, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96, 107 (1983) ]."

**11.** The United States Supreme Court refused to take a position on this issue. It declined to review *Adkins,* 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), as well as other similar alibi instruction cases. *E.g., Moran v. Ohio,* 469 U.S. 948, 105 S.Ct. 350, 83 L.Ed.2d 285 (1984); *McEl-*

have earlier noted, the language of the alibi instruction here is virtually the same as the one condemned in *Adkins.* Under the harmless constitutional error doctrine, the State's burden is to show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710. *See also State v. Boyd,* 160 W.Va. at 244, 233 S.E.2d at 718.

In the present case, the entire defense was based on alibi. The record with regard to alibi [12] shows that both the relator and his girlfriend testified that on the evening and during the time of the robbery, he was with her at their residence. Both testified that he was recovering from complications arising from a hernia operation performed several weeks earlier. Cross-examination of both the relator and his girlfriend did not reveal any critical flaws in their testimony. Admittedly, there was a conflict between their testimony and that of the victim and the codefendants, who testified that the relator was with them the night the crime was committed.

█ We cannot conclude that the relator's alibi evidence was inherently incredible such that the State's case was proved beyond a reasonable doubt. To restate the matter we cannot say that the alibi issue can be deemed harmless beyond a reasonable doubt. Much the same result has occurred in other jurisdictions where a burden-shifting alibi instruction has been offered and the question arises as to whether it is harmless constitutional error. In this situation, the courts look to the credibility of the alibi testimony and, if it is not incredible, the error is not harmless. *E.g., Stump v. Bennett,* 398 F.2d 111, 121 (8th Cir.), *cert. denied,* 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968); *Simmons v. Dalsheim,* 543 F.Supp. 729, 748 (S.D.N.Y.1982); *Ward v. State,* 234 Ga. 882, 218 S.E.2d 591 (1975); *Commonwealth v. Berth,* 385 Mass. 784, 787–89, 434 N.E.2d 192, 195 (1982); *People v. Jiminez,* 111 A.D.2d 832, 833, 490 N.Y.S.2d 256, 257 (1985).

For the foregoing reasons, we hold that the initial conviction by the Circuit Court of Kanawha County contained error of a constitutional dimension which cannot be declared harmless. For this reason, the relator is entitled to a writ of habeas corpus. He is entitled to a new trial and should be released from custody if not retried within ninety (90) days from the date of this opinion.

Writ Granted As Moulded.

---

roy *v. Holloway,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981).

**12.** The State filed as Exhibit No. 3 portions of the transcript dealing with the alibi testimony.