## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**David Ballard, Warden, Mount Olive Correctional Complex, Respondent Below, Petitioner**

**v. No. 13-0240** (Ohio County Nos. 06-C-342 and 05-C-442)

**Phillip Reese Bush,**
**Petitioner Below, Respondent**

**FILED**

**April 23, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

The petitioner, David Ballard, Warden, Mount Olive Correctional Complex ("Warden"), by counsel Laura Young, Assistant Attorney General, appeals from the February 15, 2013, order of the Circuit Court of Ohio County ("habeas court") which granted relief to the respondent, Phillip Reese Bush ("Bush"). The habeas court set aside Bush's 1983 convictions of the murders of Charles Dale Goff and Kathleen Jane Williams and granted Bush a new trial. Bush, by counsel Donald J. Tennant, Jr., filed a brief in support of the habeas court's order.

This Court has considered the parties' briefs and the record-appendix on appeal. The facts and legal arguments are adequately presented, and the decisional process has been significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record-appendix, this Court finds that the habeas court committed error in granting relief pursuant to its February 15, 2013, order. As such, this case satisfies the "limited circumstances" requirement of Rule 21(d) of this Court's Revised Rules of Appellate Procedure, thereby rendering a memorandum decision appropriate.

Bush was convicted in 1983 of two counts of first degree murder under the State's felony-murder theory. The jury found that Bush committed the murders in the commission of, or attempt to commit, robbery and/or first degree sexual assault. The issue before this Court is whether the instructions given at trial pertaining to felony murder deprived Bush of due process of law. This Court concludes that no due process deprivation occurred. Accordingly, the February 15, 2013, order of the habeas court is reversed, and Bush's two first degree murder convictions are reinstated.

1

## I. Factual Background

The evidence presented by the State in the 1983 trial revealed that Charles Dale Goff was a bail bondsman who knew Bush from prior business transactions. Bush became upset with Goff and vowed revenge when Goff was unable to secure his release from incarceration in Ohio. Soon after his release through another bondsman, Bush spoke with Goff by telephone, and Goff, hoping to purchase some gold coins, drove with Kathleen Jane Williams on the night of September 18, 1982, to Evergreen Cemetery in Fairmont, Marion County. The cemetery was described as a remote, wooded area.

The next day, September 19, Goff's automobile was discovered parked in the cemetery. Inside the automobile were the bodies of Goff and Williams. Goff had been shot twice, and Williams had been shot four times. According to the State, Goff was robbed, and Williams was sexually assaulted. Goff's gold ring with an inset diamond and his gold watch with diamonds were subsequently traced to Bush. A gold, four-leaf clover necklace with diamonds that belonged to Williams was missing. Williams was found in the automobile and was partially clothed. An examination of the panty hose on Williams's body revealed grass clippings throughout the inside of the panty hose and next to her skin. Although disputed in subsequent habeas proceedings, the evidence of the State indicated that Williams had recently had sexual intercourse.

## II. The 1983 Trial

The Marion County grand jury returned an indictment charging Bush, in count one, with the murder of Charles Dale Goff and, in count two, with the murder of Kathleen Jane Williams. The case was styled *State v. Bush,* No. 83-F-3. Because of extensive pretrial publicity, the case was transferred, on Bush's motion, to the Circuit Court of Ohio County. The case was then styled *State v. Bush*, no. 83-F-30 (Ohio County).

The murder statute in effect at the time of the two homicides in 1982 and Bush's trial in 1983 was *W.Va. Code*, 61-2-1 (Revised Code 1931). That statute stated, in part: "Murder . . . in the commission of, or attempt to commit, arson, rape, robbery or burglary, is murder of the first degree."[1] That language constituted felony murder under the statute, and the word "rape" was later replaced by the phrase "sexual assault" in 1987.[2]

---

[1] Similar language concerning murder can be found in prior versions of the Code as early as 1882. *See W.Va. Code*, ch. 144, § 1 (1882).

[2] Currently, the predicate offenses for felony murder are arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony

(continued...)

Although it was not until 1987 that "sexual assault" appeared as a predicate offense for felony murder, the offense of sexual assault was promulgated in 1976 as a replacement for the offense of rape.[3]  The felony murder provisions of *W.Va. Code*, 61-2-1 (Revised Code 1931), in terms of "rape" versus the updated "sexual assault," were, thus, slow to be amended to reflect existing law.  In fact, the trial judge in Bush's case noted that the felony murder provisions had not been amended to comport with the 1976 Sexual Offenses Act.

Bush's trial began on March 21, 1983.  The State's theory was that Bush murdered Goff and Williams in the commission of, or attempt to commit, robbery and/or first degree sexual assault.  Bush asserted the defense of alibi and insisted that the items taken from the scene of the killings were traceable to other individuals.

Although the felony murder statute then in effect employed "rape" rather than "sexual assault," both the State and Bush offered felony murder instructions utilizing the phrase "first degree sexual assault" found in the Sexual Offenses Act.  Those instructions (State's instruction no. 1 and Bush's instruction no. 28) were refused as covered by the charge to be given to the jury.

The charge given at trial included the following:

---

[2](...continued)
offense of manufacturing or delivering a controlled substance.

[3] In 1976, the West Virginia Legislature enacted article 8B, chapter 61, of the Code, entitled "Sexual Offenses."  The Sexual Offenses Act included the felony offenses of first, second and third degree sexual assault and various definitions.  In enacting article 8B, a number of prior, related provisions were repealed, including *W.Va. Code*, 61-2-15, which addressed rape.

Although subsequently amended, the section concerning first degree sexual assault relevant to the case now before us was found in *W.Va. Code*, 61-8B-3 [1976].

As reflected in the statutory amendments, the elements of first degree sexual assault are different from the former offense of rape.  Under *W.Va. Code*, 61-8B-3 [1976], first degree sexual assault includes, *inter alia*, sexual intercourse by forcible compulsion with either serious bodily injury or the employment of a deadly weapon.  By contrast, the statutory offense of rape occurred where "any male person carnally knows a female person, not his wife, against her will by force."

The Court instructs the jury that two (2) of six (6) verdicts may be found under the indictment in this case as the evidence so warrants.

They are: (1) not guilty of first degree murder as charged in the first count in the indictment; (2) guilty of murder in the first degree (*murder committed in the commission or attempt to commit a robbery and/or first degree sexual assault*), as charged in the first count of the indictment; (3) guilty of murder in the first degree (murder in the commission of, or attempt to commit a robbery and/or first degree sexual assault), as charged in the first count of the indictment with a recommendation of mercy; (4) not guilty of first degree murder as charged in the second count in the indictment; (5) guilty of murder in the first degree (*murder in the commission of, or attempt to commit first degree sexual assault and/or robbery*), as charged in the second count of the indictment; (6) guilty of murder in the first degree (murder in the commission of, or attempt to commit first degree sexual assault and/or robbery), as charged in the second count of the indictment with a recommendation of mercy.[4]

(Emphasis added).

---

[4] An additional instruction given to the jury stated:

The Court further instructs the jury that, under the felony murder rule of this State, murder in the commission of, or attempt to commit aggravated robbery and/or first degree sexual assault is murder in the first degree, and if the jury believes from all the evidence in this case, beyond a reasonable doubt, that the said Charles Dale Goff and Kathleen Jane Williams, were murdered by the defendant, Philip Reese Bush, while Philip Reese Bush was engaged in committing or attempting to commit an aggravated robbery and/or first degree sexual assault upon either Charles Dale Goff or Kathleen Jane Williams, then you shall find the said Philip Reese Bush, guilty of murder in the first degree as charged in both counts of the indictment in this case.

The circuit court also instructed the jury on the elements of aggravated robbery and first degree sexual assault, pursuant to the then-current statutory authority, *i.e.*, *W.Va. Code*, 61-2-12 [1961] (robbery); *W.Va. Code*, 61-8B-1 [1976] (defining "sexual intercourse," "deadly weapon" and "forcible compulsion"); and *W.Va. Code*, 61-8B-3 [1976] (addressing first degree sexual assault).

The only objection raised by Bush's trial counsel to the above instructions concerned whether the underlying felonies of robbery and first degree sexual assault were supported by the evidence. The objection was overruled. Bush did not challenge the substitution of "first degree sexual assault" for "rape" in the instructions, an issue he would later assert constituted a denial of due process, since the Legislature did not replace "rape" with "first degree sexual assault" in the felony murder statute until 1987, after Bush's trial.

The jury found Bush guilty of two counts of first degree murder committed in the commission, or attempt to commit, a robbery and/or first degree sexual assault with regard to the deaths of Charles Dale Goff and Kathleen Jane Williams.

On April 6, 1983, a post-trial hearing was conducted, during which the trial court indicated that the evidence with regard to both robbery and first degree sexual assault was substantial. Bush's motion for a judgment of acquittal or, in the alternative, for a new trial was denied. Bush was sentenced to consecutive terms of life imprisonment. On January 11, 1984, this Court refused Bush's direct appeal.

### III. Prior Habeas Petitions

The matter now before us is Bush's third attempt to secure habeas relief in state court.

The first petition, filed in the Circuit Court of Ohio County in 1986, was styled *State ex rel. Bush v. Hedrick, Warden*, no. 86-C-775 (Ohio County), and was instituted under the *West Virginia Post-Conviction Habeas Corpus Act*, *W.Va. Code*, 53-4A-1 [1967], *et seq*. Bush was represented by new counsel, and his petition was amended and supplemented several times. Moreover, pursuant to *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981), Bush completed a checklist of grounds for relief and was afforded a series of evidentiary hearings. On October 13, 1988, the Circuit Court of Ohio County entered a forty-seven page order denying relief. Bush's appeal was denied by this Court in December 1989.

In the first habeas proceeding, Bush's counsel did not challenge the substitution of "first degree sexual assault" for "rape" in the trial court's instructions. He did, however, allege ineffective assistance of counsel and insufficiency of the evidence with regard to the claim of sexual assault. Finding no merit in the allegation of ineffective assistance of counsel, the circuit court stated that "the depth of the effort mounted by the Court appointed defense counsel clearly indicates to the Court that more than an effective defense was presented." As to the sufficiency of the evidence of sexual assault, the order

5

states: "The Court also concludes that based upon the facts as presented to the trial court that there was more than sufficient evidence for the jury to consider sexual assault for the felony murder rule."[5]

Bush's second state petition for habeas relief was filed in the Circuit Court of Ohio County in 1995. Filed under the *West Virginia Post-Conviction Habeas Corpus Act*, the case was styled *Bush v. Trent, Warden*, no. 95-C-43 (Ohio County). In this second proceeding, Bush challenged the scientific evidence relating to the sexual assault component of the underlying case. Bush was again appointed new counsel, who later testified at deposition that the order of appointment limited the representation to the forensic issue.

On December 3, 2001, the circuit court entered an order denying relief with regard to Bush's second habeas petition. Supplemental orders denying relief were entered in January and March 2002.

As reflected in the December 3, 2001, order, the circuit court determined that the scientific evidence, at most, indicated that Williams had sexual intercourse at some point on the night of her murder. That evidence, however, was neutral and neither implicated nor excluded Bush as the other party. The circuit court, thus, concluded that the admission of the scientific evidence at trial was not unfairly prejudicial to Bush.

Moreover, the December 3, 2001, order reveals that Bush raised an additional issue unrelated to the scientific evidence. According to the order, Bush asserted that his convictions should be set aside because it was uncertain upon which underlying offense the jury relied on to convict him of felony murder, *i.e.*, that if one conviction is bad, "both are bad." Accordingly, Bush suggested that the circuit court "look at the instructions and the verdict, not the sufficiency of the evidence." Concluding, however, that Bush failed to show any constitutional error with regard to the underlying felonies, the circuit court rejected Bush's assertion.

_____

[5] It should be noted that, in the first habeas proceeding, Bush alleged error concerning whether the trial court's instruction on the defense of alibi had improperly shifted the burden of proof. The circuit court rejected that assertion. Thereafter, on January 4, 1990, Bush filed a petition for habeas relief in the United States District Court for the Northern District of West Virginia. That proceeding ultimately resulted in the decision in *Bush v. Legursky*, *Warden*, 966 F.2d 897 (4th Cir.), *cert. denied*, 506 U.S. 1009 (1992), in which the Fourth Circuit rejected Bush's challenge to the alibi instruction given at trial.

An appeal from the denial of relief as to Bush's second habeas petition was refused by this Court on November 6, 2002.

## IV. The Current Habeas Petition

The current matter, Bush's third habeas proceeding in state court, arises from his amended petition filed in 2011. The amended petition is styled *State ex rel. Bush v. Ballard, Warden,* no. 06-C-342 and no. 05-C-442 (Ohio County), and was also filed under the *West Virginia Post- Conviction Habeas Corpus Act*. Once again, new counsel was appointed to represent Bush.

Bush challenged the substitution of "first degree sexual assault" for "rape" in the instructions given at trial and contends that the substitution denied him the right to due process of law, since the Legislature did not place "first degree sexual assault" in the felony murder statute until 1987. At the time of the alleged murders in 1982 and trial in 1983, "rape" was a specified predicate offense in the felony murder statute. Therefore, Bush argues, the trial court improperly legislated from the bench by changing the word "rape" to the phrase "first degree sexual assault." Moreover, Bush's prior habeas counsel were "collectively ineffective" in not pursuing that issue. In the case of Bush's second habeas proceeding, which primarily concerned scientific evidence, Bush asserted that his counsel was ineffective in not adequately framing the issue.[6]

Following hearings on the petition, the habeas court entered an order on February 15, 2013, granting Bush relief in habeas corpus. The convictions were set aside, and Bush was granted a new trial.

The habeas court acknowledged that, with regard to the first habeas petition, Bush received an omnibus hearing pursuant to *Losh v. McKenzie, supra.* Nevertheless, the habeas court found that the validity of substituting "sexual assault" for "rape" in the instructions in the underlying trial had not been adjudicated or waived. In addition, the habeas court found that Bush's counsel was ineffective for failing to raise the issue. The habeas court reached a similar conclusion with regard to Bush's second petition. The habeas court determined that Bush's counsel in that proceeding was either ineffective or only representing Bush to challenge the scientific evidence.

---

[6] During the current habeas proceeding, the parties stipulated that neither trial counsel nor previous habeas counsel explained the instructional issue of rape versus sexual assault to Bush.

7

Concluding that the instructions were unconstitutional and that Bush's trial and prior habeas counsel should have challenged the instructions, the habeas court stated:

> Because "sexual assault" was not an enumerated felony in the felony murder statute at the time of either the crime or Petitioner's trial, the jury instruction advised the jury that they could convict Petitioner if they found him guilty of an act which was not included in the felony murder statute, therefore making said instruction unconstitutional.

The Warden appeals to this Court from the February 15, 2013, order.

## V. Standard of Review

Syllabus point 1 of *Mathena v. Haines, Warden*, 219 W.Va. 417, 633 S.E.2d 771 (2006), states:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

*Accord* syl. pt. 1, *Ballard, Warden v. Dilworth*, 230 W.Va. 449, 739 S.E.2d 643 (2013).

## VI. Discussion

While the law in this State does not contemplate successive habeas petitions, the *Post-Conviction Habeas Corpus Act* allows the assertion of contentions which "have not been previously and finally adjudicated or waived." *See W.Va. Code*, 53-4A-1 [1967]. Another avenue to reach the merits of a contention, post-trial, is through a showing of ineffective assistance of previous habeas counsel. Syllabus point 4 of *Losh v. McKenzie*, *supra*, states that a prior omnibus habeas corpus hearing is *res judicata* as to all matters raised and as to all matters known or which, with reasonable diligence, could have been known. Syllabus point 4 further states, however, that a habeas petition may still be filed on the ground of "ineffective assistance of counsel at the omnibus habeas corpus hearing." In the current matter, the habeas court found that the instructional issue had been neither adjudicated nor waived. Moreover, the habeas court reached the merits of the instructional issue through a finding of ineffective assistance of prior habeas counsel.

8

Bush is not asserting that the felony murder provisions of the murder statute then in effect, *W.Va. Code*, 61-2-1 (Revised Code 1931), are unconstitutional.[7] To the contrary, Bush contends that the trial court altered the statute by substituting "first degree sexual assault" for "rape" in the jury instructions, thereby denying Bush due process of law.

The ruling of the habeas court and the position taken by Bush are undermined by the fact that the felony murder statute does not, *per se*, criminalize the enumerated predicate offenses or set forth the elements of those offenses. Syllabus point 5 of *Stuckey v. Trent*, 202 W.Va. 498, 505 S.E.2d 417 (1998), clarifies that felony murder is an "alternative means" of committing the statutory offense of first degree murder. Therefore, in the case of felony murder, the respective statutes relating to arson, robbery, *etc.*, must be consulted. Syllabus point 2 of *State v. Stacy*, 181 W.Va. 736, 384 S.E.2d 347 (1989), states that "[s]ince the underlying felony is an essential element of felony-murder, the jury must be instructed as to the elements which constitute the underlying felony."

In this case, it is important to recognize that the statutory elements of rape are different from the statutory elements of first degree sexual assault. *See* n. 3, *supra*. The habeas court found constitutional error in the instructions because first degree sexual assault was not included in the felony murder statute at the time of the alleged murders and subsequent trial. As a result, the habeas court suggests that the State's theory should have been based on robbery and/or "rape." However, the statutory offense of rape was repealed in 1976 and was, thus, not the law in 1982 and 1983, the felony murder statute notwithstanding. Instead, the relevant offense during the period in question was first degree sexual assault, enacted by the Legislature as part of the Sexual Offenses Act. Consequently, that aspect of Bush's trial was properly presented to the jury in the context of first degree sexual assault. Both the State and Bush offered felony murder instructions utilizing the phrase "first degree sexual assault" found in the Sexual Offenses Act. In fact, the habeas court's February 15, 2013, order states that rape "was a non-existent crime at the time of Petitioner's conviction." Consequently, as the Warden points out, had the word "rape" been employed, the jury would have been instructed on a non-

---

[7] According to the *Losh* checklist completed by Bush in his first habeas petition filed in 1986, he waived the contention that the statute under which his convictions were obtained is unconstitutional.

existent offense, which could have resulted in the same type of argument that Bush is asserting in the current matter.[8]

Finally, the sufficiency of the evidence as to both predicate offenses, robbery and first degree sexual assault, was established at trial by the State. In a post-trial hearing in the underlying case, the trial court indicated that the evidence with regard to both robbery and first degree sexual assault was substantial. Bush's motion for a judgment of acquittal or, in the alternative, for a new trial was denied. Moreover, the October 13, 1988, order entered in Bush's first habeas proceeding stated: "The Court also concludes that based upon the facts as presented to the trial court that there was more than sufficient evidence for the jury to consider sexual assault for the felony murder rule."

---

[8]     The import of the habeas court's reasoning is that neither "rape" nor "sexual assault" could have been used as a predicate offense under the felony murder statute during the period in question. Such a result would have negated a significant, alternative means of committing first degree murder.

Exhibit C attached to the current habeas petition is the deposition of Bush's first habeas counsel, Paul M. McKay. The deposition includes the following exchange which highlights the problem with the reasoning of the habeas court and Bush:

Q. Which obviously [as to the felony murder statute] would not have been permissible to instruct the jury on rape because rape had been abolished in 1976 as an offense?

A. Correct.

Q. But would you agree that it would not have been proper to instruct the jury on first degree sexual assault either because that was not one of the enumerated statutory offenses for felony murder?

A. That's correct. I would agree.

See syl. pt. 2, in part, Click v. Click, 98 W.Va. 419, 127 S.E. 194 (1925) ("It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.").

**VII. Conclusion**

The habeas court committed error in granting relief based on the trial court's substitution of "first degree sexual assault" for "rape" in the jury instructions. Accordingly, the February 15, 2013, order of the Circuit Court of Ohio County is reversed, and Bush's two first degree murder convictions are reinstated.

Reversed.

**ISSUED**:  April 23, 2014

**CONCURRED IN BY**:

**Chief Justice Robin Jean Davis**
**Justice Brent D. Benjamin**
**Justice Margaret L. Workman**
**Justice Menis E. Ketchum**
**Justice Allen H. Loughry, II**

11